Robert C. and Willie P. Speigner appeal from a summary judgment for defendants I. Sunnie Howard and Lowder Realty Company, Inc., d/b/a Lowder Realty Better Homes and Gardens ("Lowder") in plaintiffs' action based upon fraud, negligence, and wanton conduct in the sale of a house. That summary judgment was made final pursuant to Rule 54(b), A.R.Civ.P. We affirm.
The lawsuit grew out of the sale of a home owned by Mrs. Missouri Dukes Minor to the Speigners and their subsequent experience with leaks of rainwater after they took possession.
Mrs. Minor had purchased the house around 1978. Two years later, she added a "Florida room," which was constructed with a flat roof. This roof is not visible from a ground position outside the house. Approximately one year after she added this room, Mrs. Minor noticed, at different times, two leaks in the ceiling of that room. According to Mrs. Minor, after having the roof repaired, she experienced no additional leaks.
On September 27, 1984, Ms. Sunnie Howard, a listing agent with Lowder, met with Mrs. Minor at the house and obtained an exclusive listing for the sale of the house. At that time, Mrs. Minor informed Ms. Howard about the leaks and the repairs. Ms. Howard completed a "listing profile sheet" on the house, which included a reference to the "Florida room." A contradiction exists between the testimony of Ms. *Page 369 
Howard and that of Mrs. Minor concerning the availability of the "Florida room" for viewing on that occasion. Mrs. Minor deposed that she and Ms. Howard "went all over the house," including the "Florida room." But, according to Ms. Howard, she was told that they could not get into that room because the lock mechanism on the outer security doors, which covered the sliding glass doors, was rusted so as to prevent opening the door. According to Ms. Howard, she later had this defect repaired by a locksmith, but the key Mrs. Minor had for the door would not open the lock.
Ms. Howard stated further that Mrs. Minor told her that she, Mrs. Minor, had another set of keys in New York, where she had gone for a time, and would send Ms. Howard those keys. Ms. Howard never received these keys, but Ms. Howard had the locksmith make a key to the back door of the "Florida room" on the day the sale was closed. Mrs. Minor disputed this, deposing that she had left a key to the "Florida room" in a cigarette box in the den, and denied making any commitment to send any keys from New York.
Soon after Mrs. Minor's house was put on the market, the Speigners were contacted by Ms. Andrea Chambers, a real estate agent. When the Speigners expressed interest, Ms. Chambers contacted Ms. Howard and arranged to show the house to the Speigners. According to Ms. Chambers, the "Florida room" was locked when she showed the house, so they were unable to view that room except by looking through the windows. Both Mr. and Mrs. Speigner viewed the house and grounds. Ms. Chambers deposed that during Mr. Speigner's viewing, he asked "about the roof" and was told by her that the multiple listing sheet stated that it had no known defects.
The Speigners made an offer on the house, which Mrs. Chambers passed on to Ms. Howard, along with an inquiry regarding any known defects in the roof. According to Mrs. Chambers, Ms. Howard replied that she had telephoned Mrs. Minor in New York and had been told that the roof was "okay." Mrs. Chambers added that she gave this information to the Speigners.
Ms. Howard deposed that she telephoned Mrs. Minor and inquired specifically about the roof on the "Florida room" and about the key, which, she was assured, she would receive in a few days. She was told that the roof was okay. She relayed the information to Mrs. Chambers, who communicated it to the Speigners.
Mrs. Minor contradicted this version of the events, deposing that she discussed neither the roof nor the keys with Ms. Howard by telephone while she was in New York. Mrs. Minor also deposed that when she returned from New York to pack her furniture, Ms. Howard came to the house on two occasions. On both occasions, she said, they went into the "Florida room" by unlocking the security door with a key and opening the sliding doors. However, Mrs. Minor did not contradict Ms. Howard's testimony about her earlier conversation with Ms. Howard in which Mrs. Minor had referred to the roof's repair and subsequent good condition.
The house was listed for sale on September 27, 1984. The Speigners offered to purchase the house on or about October 13, 1984. Mrs. Minor accepted the offer on October 29, 1984, and the sale was closed on January 9, 1985. Thus, from the approximate date of the Speigners' offer and the date of closing (a period of about 88 days), the Speigners never entered the "Florida room" and, apparently, did not seek to do so.
Approximately one week after the Speigners took possession of the house, they observed leakage in the ceiling of the "Florida room." They complained through the agents to Mrs. Minor, who disclaimed any responsibility. This action ensued against Mrs. Minor, Ms. Howard, and Lowder.
Plaintiffs' complaint contained several counts. Count I charged defendants with fraud in misrepresenting the condition of the roof. Count II charged fraudulent concealment of the roof's condition. Count III charged Mrs. Minor (who is not a party to *Page 370 
this appeal) with fraudulent concealment of the roof's condition. A later amendment added two counts: Count IV, which charged Ms. Howard and Lowder with breach of duty to discover adverse factors; and Count V, which charged Ms. Howard and Lowder with negligence and wanton conduct in failing to ascertain the defective condition of the roof after undertaking to do so.
The defendants answered the original and amended complaints. All defendants moved for summary judgment, based upon the pleadings and the depositions of Andrea Chambers, Robert Speigner, and Sunnie Howard.[1] Following a hearing, the trial court granted summary judgment for Ms. Howard and Lowder. This appeal followed.
 COUNT I
The charge against Ms. Howard and Lowder here is that they informed the plaintiffs "that said dwelling, and specifically, the roof thereon, was in good condition" and "represented to plaintiffs that there were no defects in the roof of said dwelling, and . . . represented that a new roof had been put on said dwelling within a year or a year and a half prior to the execution of said contract." Allegations of falsity and reliance followed.
Fraud is defined in Code of 1975, § 6-5-101:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
In their brief, plaintiffs make much of the contradiction existing between Mrs. Minor and Ms. Howard as to whether Ms. Howard did telephone Mrs. Minor in New York and inquire about the roof's condition. Ms. Howard says she did so, while Mrs. Minor says they never discussed the roof during those telephone conversations.
As this Court has previously stated in Earle, McMillan Niemeyer, Inc. v. Dekle, 418 So.2d 97, 100 (Ala. 1982):
 "Real estate brokers and salespersons should not be exempt from responsibility for statements and representations they make to induce a purchaser to act, when, under the circumstances, these amount to fraud in a legal sense. Real estate brokers and salespersons are subject to professional standards as established by § 34-27-31, Code 1975, and should use extreme caution and care in making statements and representations to their clients."
Fraud "in a legal sense" is a misrepresentation of amaterial fact, i.e., one of such a nature as would induce the injured person to take action. Bank of Red Bay v. King,482 So.2d 274 (Ala. 1985). Under the facts before the trial court, it is clear that the inducement to the Speigners' purchase here was not whether Ms. Howard did or did not telephone Mrs. Minor in New York. Indeed, Mrs. Minor did not deny telling Ms. Howard that the roof was in good condition or that it had been repaired earlier. Thus, the dispute as to whether Ms. Howard did or did not receive this information in a telephone call to New York clearly was not material.
Therefore, the gravamen of the fraud charge in Count I is that Ms. Howard falsely stated, either willfully, recklessly, or mistakenly, that the roof was in good condition, when in fact it was not.
It is clear that Ms. Howard had no personal knowledge of the condition of the roof. Her only information concerning the roof came from the seller, Mrs. Minor, whose statements concerning the roof were simply relayed to Ms. Howard. Ms. Howard then relayed the information to Ms. Chambers, who, in turn, relayed it to the Speigners. No one questions the accuracy of Ms. Howard's own statements, and, therefore, her statements were not, as *Page 371 
made by her, misrepresentations. Consequently, neither Ms. Howard, nor her employer, Lowder, can be held liable in fraud for merely conveying the statements of their principal to the agent of the Speigners, there being no evidence of bad faith on her part. Estes v. Crosby, 171 Wis. 73, 175 N.W. 933, 8 A.L.R. 1377 (1920). And see Sealy v. McElroy, 288 Ala. 93,257 So.2d 340 (1972).
 COUNT II
In Count II, plaintiffs charged that Ms. Howard and Lowder knew, or should have known, that the roof was in poor condition and fraudulently concealed this fact with knowledge that the disclosure of this fact to plaintiffs would have caused them not to consummate the purchase.
In a similar roofing case, Sanders v. White, 476 So.2d 84, 85
(Ala. 1985), this Court quoted with approval the following elements of fraudulent concealment discussed in Marshall v.Crocker, 387 So.2d 176 (Ala. 1980):
 "For active concealment to be recoverable, the facts suppressed must not only be material, but either the materiality must be known to the seller, or the facts must so constitute an element of the value of the contract as to authorize the inference of knowledge of its materiality, and the concealment must be for the purpose of continuing a false impression or a delusion under which a purchaser has fallen, or of suppressing inquiry and thereby effecting a sale with the intention to conceal or suppress. . . ."
And, in Harrell v. Dodson, 398 So.2d 272 (Ala. 1981), a case involving the sale of a home through brokers and agents, this Court held that one can be liable for fraudulent concealment only for concealing facts of which he has knowledge. Although Mrs. Minor did tell Ms. Howard of a former problem with leaks in the roof, she also assured Ms. Howard that the roof had been repaired and was in good condition at the time of listing. That is the information which Ms. Howard possessed. The fact that she knew from the owner that repairs had previously been made, standing alone, did not imput to Mrs. Howard any knowledge of present deficiencies in the roof. See Sanders v. White, supra.
Indeed, according to the deposition of Mr. Speigner, he never inquired about the history of the roof's condition nor about past defects in the roof which had been repaired. The gist of Mr. Speigner's questions concerned the present condition of the roof:
 "Q. Okay. Tell me exactly what Ms. Chambers told you that Ms. Howard said.
 "A. I asked Ms. Chambers about the condition of the house in general, and I specifically asked her about the roof.
 "Q. Did you ask about the roof in general or some particular part of the roof?
"A. I just asked her about the roof.
"Q. Okay. What did she say?
 "A. According to [Mrs. Minor], it is in good shape.
 "Q. All right. I want you to quote for me as nearly accurately as you can what Ms. Chambers said to you.
 "A. I really can't remember exact words. The only — when we went to the house, these questions were addressed to Ms. Chambers, and I addressed the question about the roof. And I asked her was there any known defects that should be brought to our attention and —
"Q. You asked that of Ms. Chambers?
"A. Yes.
"Q. Any known defects?
"A. Yes.
 "Q. Did you ask her a specific question about the roof?
 "A. I just stated I said I asked her, like I always do when I buy a house, is what condition is the roof. That is one of my questions.
 "Q. Were you asking that the first time you walked through the house?
"A. Yes. *Page 372 
 "Q. All right. And did she give you an answer then or tell you she would get you an answer?
"A. She told me she would get me an answer.
 "Q. How long was it after that that she got you an answer?
 "A. Okay. When she brought the contract over, things was itemized that was defect of the house [sic]. And —
". . . .
 "Q. And I want you again to tell me just like you are quoting Ms. Chambers, now, as best you can remember, what did she say to you?
"A. I can't remember specifically, okay?
"Q. Okay.
 "A. The best of my knowledge, when and what date she said it, like I can't remember, but I can remember she told me that the roof was in good shape. [Mrs. Minor] says wasn't any defects, wasn't no problems with the house [sic]. So I assumed that the roof was in good shape.
 "Q. All right. Do you remember Ms. Chambers saying that [Mrs. Minor] said the house was in good shape?
"A. No. No, I didn't say that.
"Q. The roof was in good shape?
 "A. I didn't say that. Okay. The — I don't think Ms. Chambers met [Mrs. Minor]. I think this is coming via the listing agent.
 "Q. I know. And that's what I am getting at. I want to know did she say that? Did she say that Sunnie Howard says that [Mrs. Minor] said the house was okay, or how did she put it to you? That's what I am trying to get you to recall.
 "A. I just — I can't really remember. I don't know. It's —
 "Q. I am not trying to push you, but — okay. Just say it one more time. I won't ask it again. Say one more time as best you recall what Andrea Chambers, your agent, said in response to your questions.
 "A. The best of my knowledge, she said that there is no defects, there were no known defects. If there was, it would be brought out.
 "Q. And have you told it to me as best you remember?
"A. Best I remember.
 "Q. Was your wife standing there when that was said?
"A. I don't think she was.
 "Q. Was that the only time that Ms. Chambers gave you an answer to that inquiry about the roof, or did she answer it again at some later time?
 "A. That was the only inquiry because I couldn't — in fact, I — we didn't actually see Ms. Chambers too many times after that. . . ."
In any case, the facts disclose that Ms. Howard was the seller's (listing) agent, while Mrs. Chambers was the buyer's agent. There were no direct dealings between the Speigners and Howard. Cooper Co. v. Bryant, 440 So.2d 1016 (Ala. 1983). Nor was there any "inequality of condition and knowledge, or other attendant circumstances" obliging Ms. Howard to do more than she did. Ibid. The Speigners had their own agent, visited the property, viewed the "Florida room" through the glass doors, and decided to purchase the house without inspecting, indeed, without insisting upon an inspection of, that room. For aught that appears, they had the same knowledge of the "Florida room" that Ms. Howard possessed. Under the facts disclosed, we must conclude that Ms. Howard concealed no material fact from the Speigners and was under no duty to disclose any other or additional facts to the Speigners.
 COUNT III
Count III related to Mrs. Minor and thus is not before us on this appeal. *Page 373 
 COUNT IV
In this count, plaintiffs alleged that Ms. Howard, as a "realtor" or "realtor-associate," and Lowder "owed to Plaintiffs an affirmative obligation and duty to exercise reasonably competent and diligent investigation or inspection of said premises" and that these defendants breached that duty "in that . . . each of them, negligently, wantonly and/or recklessly failed and/or refused to take any steps whatsoever to discover any such adverse factors." These allegations simply alleged that Howard and, therefore, Lowder, owed a duty of care to the Speigners to discover and report to them the existence of a faulty roof in this house (assuming it existed prior to their purchase).
But there was no confidential relationship between Ms. Howard and the Speigners, as we have herein found. In a succession of cases, this Court has applied the doctrine of caveat emptor in the purchase of used houses. See, e.g., Cashion v. Ahmadi,345 So.2d 268 (Ala. 1977) (caveat emptor applied in the sale of a used house where the alleged defect does not affect health or safety); Ray v. Montgomery, 399 So.2d 230 (Ala. 1980) (caveatemptor applied in the resale of used residential real estate);Cooper Co. v. Bryant, supra; Sanders v. White, supra. Here, the parties were dealing at arm's length, each side with its own agent versed in real estate transactions. Under the facts, this situation was one for the application of the doctrine ofcaveat emptor. Keeler v. Chastang, 472 So.2d 1031 (Ala. 1985).
 COUNT V
In this count, plaintiffs alleged the following:
 "2. During the course of negotiations leading up to the purchase of said premises from the Defendant, Missouri Dukes Minor, Plaintiffs communicated to the Defendant, I. Sunnie Howard, who was then and there acting within the line and scope of her employment and/or agency with the Defendant, Lowder, questions or concerns specifically as to the condition of the roof of said premises.
 "3. Said Defendant, I. Sunnie Howard, acting within the line and scope of her employment and/or agency with the Defendant, Lowder, thereafter undertook to ascertain the condition of said roof. Having undertaken to so act, said Defendants, I. Sunnie Howard and Lowder, assumed a duty to exercise ordinary and reasonable care to ascertain the condition of said roof. At all times thereafter, Plaintiffs relied upon, and said Defendant was aware that Plaintiffs relied upon her superior knowledge and experience in undertaking to exercise reasonable and ordinary care to discover the condition of said roof.
 "4. The Defendant, I. Sunnie Howard, acting within the line and scope of her employment and/or agency with the Defendant, Lowder, breached said duty of reasonable care, in that she negligently, wantonly and/or recklessly failed and/or refused to exercise due and reasonable care to discover the true and actual condition of said roof; nor did said Defendant, acting within the line and scope of her employment and/or agency with the Defendant, Lowder, take any steps whatsoever to perform a reasonably competent and diligent investigation and inspection of said roof to discover the condition thereof.
 "5. As a sole, direct and proximate result of the negligent, wanton and/or reckless breach of said duty to exercise reasonable care owed to Plaintiffs, all as aforesaid, Plaintiffs suffered damages, in that said roof thereon was shoddy, in very poor condition, leaked extensively, and in need of extensive repair and replacement. Said defective condition would have been, or should have been discovered by said Defendant, then and there acting within the line and scope of her employment and/or agency with the Defendant, Lowder, in the exercise of the duty undertaken by said Defendant to exercise due and reasonable care in the performance of a competent and diligent *Page 374 
inspection and investigation of said premises."
Under these allegations, the Speigners would have this Court hold that when they inquired of their own agent, Mrs. Chambers, about the condition of the roof, and when this question was relayed by their agent to Ms. Howard, the agent of Mrs. Minor, the seller, the seller's agent herself became obliged to affirmatively ascertain the roof's condition. In that connection, plaintiffs in their brief argue that Ms. Howard hadactual knowledge of the leaks and failed in her obligation to disclose this to the Speigners. However, the facts disclose that Ms. Howard's knowledge consisted of what she had been told by Mrs. Minor, both at the time she took the listing and during any subsequent conversations up to the time of closing. Her knowledge of the roof was that Mrs. Minor had stated that it was "in good shape."
We reiterate that this was an arm's length transaction. As stated in Mudd v. Lanier, 247 Ala. 363, 377, 24 So.2d 550
(1945):
 "[W]hen both parties are intelligent and fully capable of taking care of themselves and dealing at arms' length, with no confidential relations, . . . no duty to disclose exists when information is not requested. . . ." (Emphasis added.)
When the information was requested here, Ms. Howard was obligated to reveal her knowledge. She complied. She was not obliged to do more; certainly she was not obligated to become a guarantor of her principal's assurances. If the Speigners had desired guarantees of freedom from roofing defects, they were in a bargaining position to insist on them. Ray v. Montgomery,supra, at 233. If, as it is argued, the Canons of Ethics of the National Association of Real Estate Agents place an obligation upon the agent to personally verify his principal's declarations in a real estate transaction, such a requirement is not the law in this jurisdiction.
The Court has carefully weighed the facts and arguments of counsel and has concluded that the trial court's judgment must be affirmed. It is so ordered.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.
[1] Mrs. Minor's motion for summary judgment, based upon "the pleadings and all depositions . . . heretofore taken" was denied. Apparently, therefore, the trial court had before it the deposition of Mrs. Minor when it ruled upon the defendants' motions for summary judgment.