Sim and Lynda Blackmon appeal from a summary judgment in favor of First Real Estate Corporation in an action for negligence. We affirm.
In 1984, the Blackmons, through their agent, Bill Hogan, purchased a used home from Robert Dow and L.S. Ward, who had listed the house with First Real Estate. Shortly after the Blackmons moved into their house, they discovered sewage problems, and, as a result, instituted a suit against Dow, Ward, and First Real Estate, alleging fraudulent deceit, pursuant to Ala. Code 1975, § 6-5-104. The Blackmons later amended their complaint to include a negligence claim against First Real Estate. The trial court granted First Real Estate's motion for summary judgment as to both claims and made the judgment final pursuant to Rule 54(b), Ala.R.Civ.P. The Blackmons appeal only as to their negligence claim against First Real Estate. This appeal does not involve the Blackmons' pending claims against Dow and Ward.
Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party. Autrey v. Blue Cross BlueShield of Alabama, 481 So.2d 345 (Ala. 1985); Fountain v.Phillips, 404 So.2d 614 (Ala. 1981).
On appeal, in support of their negligence claim, the Blackmons argue that First Real Estate breached a duty of care by failing to perform a reasonable inspection of their house prior to the closing and to disclose the defective sewer system. They further argue that the health and safety risks associated with the defective sewer system render the doctrine of caveat emptor inapplicable. Both contentions are meritless.
The Blackmons predicate their negligence claim on the premise that real estate agents representing sellers of used homes owe purchasers a duty to conduct a reasonable investigation of the property and to disclose any easily discoverable defects. However, in the absence of a confidential relationship, the law does not impose such a duty.
This Court in Speigner v. Howard, 502 So.2d 367 (Ala. 1987), unequivocally rejected the exact argument that the Blackmons propound in this case, and, in doing so, reaffirmed the application of the doctrine of caveat emptor to the purchase of used houses. In Speigner, the plaintiff purchased a used house that he later discovered to be defective and, as a result, he filed a five-count complaint against the seller's real estate agency, Lowder Realty Company, and one of its listing agents, Sunnie Howard. In count four of his complaint, *Page 957 
the plaintiff charged Lowder and Howard with negligence, arguing that Lowder and Howard had breached a duty to discover defects. The trial court entered summary judgment in favor of the defendants as to all counts, and we affirmed. In doing so, we rejected the imposition of a duty on the seller's real estate company and one of its brokers in the absence of a confidential relationship:
 "In this count [count four], plaintiffs alleged that Ms. Howard, as a 'realtor' or 'realtor-associate,' and Lowder 'owed to Plaintiffs an affirmative obligation and duty to exercise reasonably competent and diligent investigation or inspection of said premises' and that these defendants breached that duty 'in that . . . each of them, negligently, wantonly and/or recklessly failed and/or refused to take any steps whatsoever to discover any such adverse factors.' These allegations simply alleged that Howard and, therefore, Lowder, owed a duty of care to the Speigners to discover and report to them the existence of a faulty roof in this house (assuming it existed prior to their purchase).
 "But there was no confidential relationship between Ms. Howard and the Speigners, as we have herein found. In a succession of cases, this Court has applied the doctrine of caveat emptor in the purchase of used houses. See, e.g., Cashion v. Ahmadi, 345 So.2d 268 (Ala. 1977) (caveat emptor
applied in the sale of a used house where the alleged defect does not affect health or safety); Ray v. Montgomery, 399 So.2d 230 (Ala. 1980) (caveat emptor applied in the resale of used residential real estate); Cooper Co. v. Bryant, [440 So.2d 1016 (Ala. 1983)]; Sanders v. White, [476 So.2d 84 (Ala. 1985)]. Here, the parties were dealing at arm's length, each side with its own agent versed in real estate transactions. Under the facts, this situation was one for the application of the doctrine of caveat emptor. Keeler v. Chastang, 472 So.2d 1031 (Ala. 1985)."
Id. 502 So.2d at 373.
In this case also, the doctrine of caveat emptor should apply. The record is devoid of any evidence of a confidential relationship between First Real Estate and the Blackmons. It is undisputed that the sellers, Dow and Ward, listed their house with First Real Estate and that First Real Estate's broker, Bob Moore, represented Dow and Ward during the sale of the house. It is also undisputed that the Blackmons were represented by their own agent, Bill Hogan of Byrd Real Estate. The record indicates that the Blackmons visited and inspected the house twice prior to the closing and that on both occasions Hogan was the only agent present. At all times, Hogan was the only agent representing the Blackmons relative to the inspection and purchase of the property. Moreover, the record reveals that Bob Moore of First Real Estate never made any representations to the Blackmons concerning the condition of the house, and, in fact, never even met with the Blackmons until the closing. The following testimony of Lynda Blackmon clearly indicates the absence of a confidential relationship:
 "Q. Let me ask you about Bob Moore. Did you ever meet with him at any time prior to that closing?
"A. One time about a month before closing.
 "Q. Was that with regard to another piece of property?
"A. Yes.
 "Q. Had you ever talked to him or met with him with regard to this particular house?
"A. No.
 "Q. Had you ever discussed with him this house or that you wanted to purchase this house with Bob Moore at any time prior to this closing?
"A. No.
 "Q. So, the only time that you saw Bob Moore with regard to the purchase of the residence in question that this lawsuit is about was at the closing?
"A. At the closing.
 "Q. Did you see him at any time after the closing?
 "A. No — oh, we saw him one time at Chuck's office. *Page 958 
"Q. That's your lawyer's office?
"A. Uh-huh, yes.
"Q. Other than that, had you seen him?
"A. No.
 "Q. Had you had any telephone conversations with him at any time prior to the closing with regard to this residence?
"A. Uh-huh, yes, one.
"Q. Tell me about that.
 "A. I had talked to Chuck and told him about the problems. We had already discussed —
 "Q. Excuse me. I'm talking about before the closing?
"A. No, huh-uh. I'd never met that man.
 "Q. You had never talked to him, never met him at any time —
 "A. Oh, once before the closing I had, but it was just a glance and, you know, five minute talk.
"Q. Was that about the other piece of property?
"A. Uh-huh, yes.
 "Q. But with regard to this piece of property, you never had any telephone conversations with him and had never met with him at any time?
"A. Never.
 "Q. He had never made any representations to you about the condition of the property or what — you know, or anything, did he?
"A. No.
 "Q. At the closing, did he make any representations to you about the condition of the property?
"A. No.
 "Q. Did you ask him any questions about the property?
 "A. I had talked to my real estate agent, and I felt like I should be talking to mine since I didn't know Bob Moore. I didn't know how he got involved in that. So I went through my real estate agent.
"Q. He was not your agent, was he?
"A. No, Bill Hogan was.
 "Q. So, you did not talk to Bob Moore about any of the conditions of the property?
"A. No.
 "Q. You didn't ask him any questions about the property?
"A. No, I told Mr. Hogan what I wanted.
 "Q. As far, as you know, has your husband had any other contact with Bob Moore?
"A. No.
 "Q. As far as you know, your husband has not talked to Bob Moore about this particular piece of property at any time prior to the closing?
"A. No.
 "Q. And to your knowledge, your husband has not had any telephone conversations with Bob Moore prior to the closing about this particular piece of property?
"A. No.
 "Q. And at the closing, your husband, to your knowledge, did not ask Bob Moore anything about the property?
"A. No.
 "Q. Did you have any contact with anybody else at First Real Estate at any time prior to the closing about this particular piece of property?
"A. No.
 "Q. Bob Moore is the only person with First Real Estate that you ever had any contact with?
"A. Yes.
 "Q. To your knowledge, has your husband had any contact with anybody else?
"A. No."
Alternatively, the Blackmons argue that the doctrine ofcaveat emptor does not apply in sales of used houses when defects affect health and safety. But, because we find an absence of a confidential relationship, First Real Estate was not bound by a duty to inspect and to disclose, regardless of whether the malfunctioning sewage system posed a risk to the health and safety of the Blackmons. In an analogous case,Cooper Co. v. Bryant, *Page 959 440 So.2d 1016 (Ala. 1983), we addressed the same issue — that is, whether a seller's listing agent owes a legal duty to a buyer to disclose defects that affect the health and safety of the buyer — and concluded that the listing agent did not owe the buyer such a duty. Finding an absence of evidence showing misconduct or negligence on the part of the listing agent, we observed:
 "In the case at bar, there is not even a scintilla of evidence that Cooper, the listing realtor (and the only one who knew or might have known about the crack in the bathroom floor), was the agent of the Bryants [purchasers]. Cooper had been retained by the sellers and played no part in bringing the Bryants to the house. There were no direct dealings between the Bryants and Cooper.
 "Additionally, there was no 'inequality of condition and knowledge, or other attendant circumstances' which would have obligated Cooper to speak. Marshall, 387 So.2d [176 at] 179. The record clearly shows that the Bryants had several opportunities to inspect the premises and inquire about its condition. At the time, Mr. Bryant was employed by a company that tested ground conditions and structural qualities, and he knew of the importance of a good building foundation. We cannot hold, under these facts, that Cooper had a legal duty to communicate with the Bryants about the house."
Id. 440 So.2d at 1018-19. (Emphasis added.)
The main principle to be gleaned from Cooper Co. relative to the instant case is that a listing agent representing a seller of a used home does not owe the buyers a duty to disclose defects affecting health and safety unless a confidential relationship exists between the parties. In short, the doctrine of caveat emptor still applies in this area of the law.
In this case, as in Cooper Co., there was no evidence of any confidential relationship between the buyers and the realtor that would have created a duty on the realtor's part to disclose defects affecting health and safety. "Where there is no duty, there can be no negligence." Rose v. Miller Co.,432 So.2d 1237 (Ala. 1983). Therefore, First Real Estate was entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.
For the foregoing reasons, the summary judgment for First Real Estate is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.