This case presents once again a question involving the extent of liability of a listing real estate agent for information placed in a multiple listing service when the listing agent had obtained the information from the sellers. Speigner v. Howard,502 So.2d 367 (Ala. 1987).
Plaintiffs, Scott and Valerie Miller, husband and wife, purchased a house from Steven and Sharon Davis.[1] Much of the information on the house was in a multiple listing service publication, and the Millers claimed that the information was false concerning the years remaining on the existing mortgage and the extent of the hardwood floors, and that they relied on that information to their detriment. The Millers sued the sellers; the multiple listing service; the mortgage company; the sellers' realtor and *Page 11 
its agent; and Betty Sexton and First Real Estate Company of Alabama, the listing agents, who are the appellees, alleging breach of contract, negligence, and fraud. The trial court granted a summary judgment in favor of Sexton and First Real Estate, the listing agents, and made it final pursuant to Rule 54(b), Ala.R.Civ.P. On this appeal, the sole legal question is whether the trial court erred in granting the listing agents' motion for summary judgment.
 FACTS
In early 1985, the Millers were interested in selling their house and buying another. They consulted Charles Martin of Remax Realty, who provided the Millers with a catalogue of homes for sale known as the "Multiple Listing Service" (hereinafter "MLS"). The MLS provides prospective house buyers with pictures of the various local houses for sale, along with a thumbnail sketch of their features and/or selling points. The MLS information regarding the house in question was obtained by Betty Sexton from the sellers.
Using the MLS, the Millers located the Davises' house, which appeared to meet their needs. They had previously prepared a list of special requirements that they wanted in a house. One of those requirements was hardwood floors throughout the house, because Valerie Miller was allergic to house dust commonly retained by carpets.
The Millers went to the house with Martin on two separate occasions before making an offer. After several offers and counteroffers, the Millers and the Davises reached an agreement.
At closing, the Millers asked Sexton whether the sellers had an amortization schedule for the existing mortgage. Sexton and the sellers told the Millers that they did not have the schedule with them. At her deposition, Valerie Miller stated that Bill Lloyd, the closing attorney, said that he would order an amortization schedule for the Millers, which satisfied them at that time. Insofar as the evidence shows, this is the only time that Sexton directly talked to the Millers.
After moving into the house, the Millers discovered that carpets had concealed non-hardwood flooring in certain rooms of the house. Months later, the Millers received the requested amortization schedule, and it indicated that there were 19 years remaining on the mortgage rather than the 17 years indicated in the MLS. The Millers sued, alleging breach of contract, negligence, and fraud, against numerous defendants. On appeal, however, the Millers restrict their argument against these two defendants to fraud and negligence.
At this point, we should note that this action was commenced before June 11, 1987; therefore, the applicable standard of review is the "scintilla rule." See Act 87184, Ala. Acts 1987.
 "Rule 56, Ala.R.Civ.P., sets forth the two-tier standard for granting summary judgment. That rule requires the trial court to determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. This rule must be read in conjunction with the scintilla rule, so that summary judgment will not be granted if there is a scintilla of evidence supporting the argument of the non-moving party. Silk v. Merrill Lynch, Pierce, Fenner Smith, Inc., 437 So.2d 112, 114
(Ala. 1983). On appeal from a summary judgment, we must evaluate the evidence presented to the trial court and ascertain for ourselves, in light of the scintilla rule, whether there were any factual questions due to be decided by the jury. Kemp Motor Sales, Inc. v. Lawrenz, 505 So.2d 377, 378-79 (Ala. 1987)."
Tribble v. Provident Life Accident Ins. Co., 534 So.2d 1096,1097 (Ala. 1988).
The Millers based their entire argument upon the contention that they relied on false information concerning the house, which Sexton had relayed to the MLS. They assert that because Sexton contributed to the overall misrepresentation, she should be held accountable. The Millers further assert that Sexton was negligent in *Page 12 
her failure to seek verification of the information relayed to MLS. We disagree.
This Court recently summarized the cause of action of fraud and misrepresentation as follows:
 "A cause of action for fraud and misrepresentation is authorized by Code 1975, § 6-5-100 et seq. To find a cause of action under § 6-5-100, a court must find the following elements:
 " ' "(a) [A] false representation [usually] concerning an existing material fact, . . .;
 " ' "(b) representation which (1) the defendant knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling plaintiff that defendant had knowledge that the representation was true while not having such knowledge [citation omitted];
 " ' "(c) reliance by the plaintiff on the representation and that he was deceived by it [citation omitted];
 " ' "(d) reliance which was justified under the circumstances [citation omitted];
 " ' "(e) damage to the plaintiff proximately resulting from his reliance [citation omitted]." '
 "Army Aviation Center Fed. Credit Union v. Poston, 460 So.2d 139, 142-43 (Ala. 1984), quoting First Virginia Bankshares v. Benson, 559 F.2d 1307, 1313
(5th Cir. 1977)."
Patel v. Hanna, 525 So.2d 1359, 1360 (Ala. 1988).
In Speigner v. Howard, 502 So.2d 367 (Ala. 1987), this Court addressed the question of whether one who relays information, unaware that it is false, can be held liable in fraud:
 "It is clear that Ms. Howard [listing agent] had no personal knowledge of the condition of the roof. Her only information concerning the roof came from the seller, Mrs. Minor, whose statements concerning the roof were simply relayed to Ms. Howard. Ms. Howard then relayed the information to Ms. Chambers, who, in turn, relayed it to the Speigners. No one questions the accuracy of Ms. Howard's own statements, and, therefore, her statements were not, as made by her, misrepresentations. Consequently, neither Ms. Howard, nor her employer, Lowder, can be held liable in fraud for merely conveying the 2tatements of their principal to the agent of the Speigners, there being no evidence of bad faith on her part. Estes v. Crosby, 171 Wis. 73, 175 N.W. 933, 8 A.L.R. 1377 (1920). And see Sealy v. McElroy, 288 Ala. 93, 257 So.2d 340 (1972)."
502 So.2d at 370-71 (emphasis on "merely" original; other emphasis added).
It is apparent that Sexton, in this case, acted as a mere conduit through which information was supplied by the seller to MLS and, in light of our holding in Speigner, she and her employer cannot be held liable for fraud or for negligence, there being no evidence of bad faith on her part.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] The Davises divorced during the transaction and Mrs. Davis's name is now Sharon Dobbs.