This is an appeal from an action brought by First Real Estate against Winters to recover an amount paid by First Real Estate in settlement of a claim made by Ronald and Angela Key.
Winters had employed First Real Estate to sell her home. The Keys, husband and wife, purchased the Winters house for $62,500. Much of the information and characteristics pertaining to the house were summarized in a multiple listing service publication. The features of Winters's home contained in the multiple listing service publication were obtained from Winters by Allyne Robinson, listing agent employed by First Real Estate. The Keys, after purchasing Winters's home, discovered that the house was not connected to the city sewer system, but instead had a septic tank.
After this discovery the Keys contacted First Real Estate, complaining about the situation and suggesting that they would sue First Real Estate if some type of settlement was not reached. First Real Estate contacted and informed Winters of the situation and the Keys' position. Winters responded by denying any liability and asserting that she never stated that the house was connected to the city sewer system. (Some months prior to the sale the city sewer lines were extended along the street fronting the house, but the house was not connected to it.)
In May 1986 First Real Estate and the Keys settled the "claim" for $5,000. (The exact cost to connect the house to the sewer system is unknown because the Keys never had it connected. There was other evidence establishing the cost at $2,500.) A release was executed absolving "First Real Estate, their employees and agents from any and all liability whatsoever." *Page 419 
Subsequently, the Keys sold the house for $71,900 without connecting to the city sewer. First Real Estate then made demand upon Winters for the amount of the settlement. Suit followed in October 1986.
First Real Estate's complaint against Winters alleged several counts charging Winters with, in sum, fraud and misrepresentation. At the hearing First Real Estate additionally asserted that it was seeking indemnity from Winters because it was acting as Winters's agent when First Real Estate made the settlement with the Keys. After ore tenus proceedings, the trial court entered judgment for Winters.
On appeal First Real Estate addresses its arguments to various theories of indemnity as between a principal and agent and indemnity or contribution among joint tort-feasors. Winters's brief asserts first that indemnity between principal and agent is inapplicable because it was not an issue at trial. She then argues eight other issues concerning, among others, procedural matters, the effect of certain parts of the closing contract executed by Winters and the Keys, and the effect of the release executed by First Real Estate and the Keys.
It is difficult to ascertain the issues and facts upon which the judgment was granted because the judgment appears only in the case action summary.
We first address whether First Real Estate, as a joint tort-feasor with Winters, would be entitled to indemnity or contribution.
As all the testimony was taken orally by the trial judge sitting as the trier of fact, the judgment reached is presumed correct on appeal, and it will not be overturned by this court if supported by the evidence and the reasonable inferences to be drawn from it. Further, although the judgment contained no finding of fact, it will be assumed that the trial court found the facts which are sufficient to support its judgment.Watts v. Talladega Federal Savings Loan Ass'n, 445 So.2d 316
(Ala.Civ.App. 1984).
In Alabama a joint tort-feasor is not generally entitled to contribution from, or indemnity by, the other tort-feasor(s).Crigler v. Salac, 438 So.2d 1375 (Ala. 1983). Some exceptions to this rule exist, allowing a joint tort-feasor indemnity, but not contribution. Compare, Mallory S.S. Co. v. Druhan,17 Ala. App. 365, 84 So. 874 (1920), and Gobble v. Bradford,226 Ala. 517, 147 So. 619 (1933).
As to the exception under the theory of indemnity, a joint tort-feasor is entitled to indemnity where: (1) he has not been guilty of any fault, except technically or constructively, or (2) where both parties are at fault but the fault of the party from whom indemnity is sought was the proximate or primary cause of the injury. Crigler, 438 So.2d 1375.
The testimony of several witnesses was offered and this evidence on the issue of "fault," as between the alleged joint tort-feasors, is in direct conflict.
Robinson, the listing agent, was approached by Winters to sell Winters's house. They toured the Winters house and Robinson asked various questions concerning the characteristics or features of the house which were needed to fill out the multiple listing form. Robinson testified that when asked about the sewer Winters responded that it was "on sewer," and Robinson indicated "sewer" on the multiple listing form.
Loretta Kelly, another sales agent for First Real Estate, and the Keys inspected Winters's house on a number of occasions. In their testimony the Keys stated that they intended to build a pool and that they, therefore, had relied on the information contained in the multiple listing form as accurate and had been specifically told the house was "on sewer" by Kelly and by Winters. Winters's testimony proceeded as follows:
 "Q. Did [Robinson] ask you anything about [the] sewer or septic tank?
"A. Not to my knowledge.
 "Q. Had you told [Robinson] anything about a sewer or septic tank?
"A. The sewer being on the street, I did.
 "Q. Have you told [Robinson] about the sewer being on the street? *Page 420 
"A. Being put in, yes, sir.
 "Q. Did you tell [Robinson] anything about it being connected to the house?
"A. No, sir.
 "Q. Did [Robinson] ask you anything about it being connected to the house?
"A. No, sir.
 "Q. Did you tell [the Keys] you had paid for having the sewer run out in the street?
"A. No, sir, that wasn't brought up.
"Q. You never?
 "A. I don't know for sure. I could have told [the Keys]. I don't remember telling them. It has been four years ago.
 "Q. Did you tell [the Keys] there was sewer out there and you paid for it?
"A. Yes.
"Q. Who did you tell that?
"A. If I told anybody I told [Robinson].
 "Q. And you told [Robinson] that the sewer was out there?
"A. Yes, sir."
Therefore, the testimony and evidence would support the apparent conclusion of the trial court that either First Real Estate was not free from fault, or that Winters's fault, if any, was not the proximate or primary cause of injury. We will not hold such to be erroneous in view of this conflicting evidence. In addition, we note that, as the Keys purchased the house for $62,500 and shortly sold the house for $71,900 (after spending approximately $2,000 on repairs), the trial court could have found that the Keys, as the "injured party," suffered no damage. If the Keys suffered no damage and thus were not entitled to recover from First Real Estate or Winters, a settlement by First Real Estate was unreasonable and would not entitle it to indemnity. See, Altec, Inc. v. FWD Corp.,399 F.2d 860 (5th Cir. 1968).
Is a principal under a duty to indemnify his agent for amounts expended by the agent to settle a threatened claim by a third party, and over the objection of the principal?
According to the Restatement (Second) of Agency § 439:
 "Unless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the illegality of his conduct to indemnify him for:
". . . .
 "(c) payments of damages to third persons which [the agent] is required to make on account of the authorized performance of an act which constitutes a tort. . . ." (Emphasis added.)
Thus, in order for an agent to recover, the agent has the burden of proving (1) that he was required or compelled to pay damages, and (2) that the amount of the payment was reasonable.See, Moses-Ecco Co. v. Roscoe-Ajax Corp., 320 F.2d 685 (D.C. Cir. 1963).
In order to decide whether First Real Estate was required to make payment, we must determine if there was any underlying liability of First Real Estate to the Keys in connection with the sale of the Winters house.
Our supreme court has clearly established the extent of the liability of a listing agent and his or her employer for fraud in the sale of a used home. Miller v. Sexton, 549 So.2d 10
(Ala. 1989); Blackmon v. First Real Estate Corp., 529 So.2d 955
(Ala. 1988); Speigner v. Howard, 502 So.2d 367 (Ala. 1987).
This line of cases establishes that a listing agent is not liable for fraud or negligence, in the absence of bad faith or a confidential relationship, for acting as a mere conduit through which information was supplied by the seller (principal) and placed in the multiple listing form. See,Speigner, 502 So.2d 367.
The Keys, as prospective purchasers, were escorted to Winters's house by Loretta Kelly. Allyne Robinson, the listing agent, never spoke with the Keys about, or made any direct representations about, the status of the sewer system at Winters's house. It is not relevant to this inquiry whether Winters represented to the Keys that the house was connected to the sewer (which Winters denies) because that would merely tend to establish Winters's liability to the Keys and not the liability of First *Page 421 
Real Estate to the Keys. Whether First Real Estate was liable to the Keys was an issue of fact and law under the evidence. The trial court could have determined an absence of such liability. Thus, the settlement of the claim was neither reasonable nor required. It is unnecessary to reach the issue of whether the amount of the payment was reasonable. (See prior discussion about the lack of showing that the Keys suffered any damage.) We can find no error in a conclusion which is amply supported by the record and could have formed the basis of the trial court's judgment. The ore tenus rule applies.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of section12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.