On September 10, 1973, Phillip and Donna Cashion, appellants, purchased a used home from Timothy and Nettie Ahmadi, appellees, through the realty firms of Pope and Quint, Inc., appellee, and Vergos Realty Company, appellee. Within a few days thereafter, Mrs. Cashion entered the home for the first time after the purchase and discovered approximately 1 1/2 inches of water in the basement; the "basement" consisted of two finished bedrooms, an unfinished room, an unfinished bathroom (without fixtures), and a hallway. The *Page 269 
Cashions subsequently moved into the house and expended funds in remodeling parts of the upstairs and in unsuccessfully trying to stop the leak or seepage in the basement. Between September, 1973, and May, 1974, when the Cashions quit making payments on the house and moved out, water seeped into the basement three or four times. The Cashions sued the owners and the realty firms contending that they are liable for the damage for not having told the Cashions of the problem prior to the sale. The case is before us on dismissal of some of the counts and on a grant of summary judgment in favor of appellees as to others. The summary judgment was based on depositions of Phillip and Donna Cashion, Dr. Timothy Ahmadi, Marge Mills, realtor for Pope and Quint, Frank Hicks, ex-realtor for Pope and Quint, Arthur Pope of Pope and Quint, and Gus Vergos of Vergos Realty.
Marge Mills, realtor for Pope and Quint, was initially contacted by Mrs. Cashion because of a newspaper advertisement either about the house in question or another house. The house in question had been previously listed by Pope and Quint, but at the time Marge showed it to Mrs. Cashion, it was listed under an exclusive contract with Vergos Realty and Bauer Realty (not a party to this suit). At no time did the Cashions converse directly with Gus Vergos or the Ahmadis.
The Cashions sued the appellees alleging a confidential relationship existed between themselves and the Ahmadis, Pope and Quint, and/or Vergos Realty, and because of the confidential relationship, anyone or all of the appellees had a duty to disclose that the house had a water problem which the appellees knew about. The complaint also contained allegations of misrepresentation; however, the parties stipulated that no affirmative misrepresentation occurred. The trial judge dismissed the counts based on confidential relationship, apparently on the basis that the facts alleged did not show such a relationship.
By amendment, the Cashions alleged further (1) that they employed Pope and Quint to find them a residence to purchase, that they reposed trust and confidence in Pope and Quint, that Pope and Quint knew about the water problem, and that Pope and Quint breached their obligation arising out of their confidential relationship in failing to inform the Cashions about it, and (2) that Vergos Realty, as agent for the Ahmadis negligently failed to disclose the water problem. The trial court granted a summary judgment in favor of Pope and Quint as to the first amended count, and a motion to dismiss as to the second.
The Cashions contend they should have been allowed to prove that Pope and Quint was their agent, or, alternatively, that a confidential relationship existed because of the "particular circumstances" (Tit. 7, § 109, Code of Alabama 1940, Recompiled 1958) associated with this case. The Cashions also argue that they should be allowed to prove that the appellees committed certain acts of concealment designed to fraudulently mislead; however, we see nothing in the pleadings or the record to indicate that the issue of fraudulent concealment was raised in the trial court, and we will consequently not consider it on appeal. Cox v. Howard Hall Co., 289 Ala. 35, 265 So.2d 580
(1972).
A real estate broker may be hired to find a buyer or to find a seller. In either case the broker owes a duty of faithfulness to his principal.
 "A broker is a fiduciary and holds a position of trust and confidence. He is required to exercise fidelity and good faith toward his principal in all matters within the scope of his employment, and to account for all funds or property rightfully belonging to his principal. He cannot put himself in a position antagonistic to his principal's interest, by fraudulent conduct, acting adversely to his client's interests, or by failing to communicate information he may possess or acquire which is or may be material to his employer's advantage, or otherwise." 12 Am.Jur.2d, Brokers, § 84.
 "As a general rule, a broker who is not a mere middleman, but is employed by a principal to act as his agent in a transaction, *Page 270 
is bound to exercise reasonable care and skill, or the care and skill ordinarily possessed and used by other persons employed in a similar undertaking. He must exert himself with reasonable diligence in his principal's behalf, and is bound to obtain for the latter the most advantageous bargain possible under the circumstances of the particular situation. Thus, a broker employed to sell property has the specific duty of exercising reasonable care and diligence to effect a sale to the best advantage of the principal — that is, on the best terms and at the best price possible. And whether the broker is engaged to effect a sale or a purchase, the employer is entitled to the benefit of his skill, and also his knowledge and best judgment, and it has been held that this is so even though he is rendering his services gratuitously.
 "If a broker does not perform his duty, or is guilty of negligence, misconduct, or unskilfulness [sic], he not only becomes liable to his principal for the damages the latter may have sustained, but also forfeits his claim to compensation. He is liable to his principal for all damages which flow naturally from his negligence and which are a direct consequence thereof." 12 Am.Jur.2d, Brokers, § 96.
See Alford v. Creagh, 7 Ala. App. 358, 62 So. 254 (1913);Alexander v. Smith, 180 Ala. 541, 61 So. 68 (1913).
The more common situation appears to be where the broker is hired by the seller to find a buyer for a percentage of the sale price, to be paid by the seller. From there, the house may be placed on a multiple listing, whereupon any number of realty firms may partake in the commission by finding a buyer.
In the instant case the house was listed under an exclusive contract with Vergos and Bauer Realties. However, Pope and Quint was allowed 50% of the commission for finding a buyer. In essence, the sale was treated as if it were a multiple listing. Marge Mills explained the procedure as follows:
 "A. No. Nothing is oral. All right. Here is how it operates. Let's assume that the listed price was fifty thousand dollars and the Cashions and I write an offer for the Cashions for forty-two. I give this to Dirk [Dirk Trusty, Sales Manager for Pope and Quint]. He calls Gus Vergos, tells him he has an offer. `Shall I bring it to you or will you come pick it up?' Now, I don't know what happened. They get together; then Vergos has a certain length of time to get to his customer and decide if they are going to counter or if they are going to accept. There was obviously no counter on this. All I'm going by is the paperwork. So, evidently, Mr. Vergos accepted the offer and called Dirk Trusty back and told him that the offer was accepted and brought him, signed by Doctor Ahmadi, an accepted offer. Now, this is our usual procedure. There is nothing unusual about this at all."
(This quotation from Marge Mills' deposition is given for illustrative purposes rather than as a fact to be attached to this case as there was some implication that Arthur Pope dealt directly with Dr. Ahmadi.)
The question raised by the Cashions is where did Pope and Quint's duty of faithfulness lie in this sale, with the sellers, the Ahmadis, or the buyers, the Cashions. Interestingly, Marge Mills, Frank Hicks (ex-broker for Pope and Quint), and Gus Vergos all acknowledged that if they were aware of a material defect in a residence they were selling, they should and would inform the buyer of the defect. (The question of whether there is a scintilla of evidence that any of the appellees knew about the water problem is addressed later.)
The Cashions would prefer to have us follow the California case of Lingsch v. Savage, 213 Cal.App.2d 729, 29 Cal.Rptr. 201, 8 A.L.R.3d 537 (1963), where the court held that if a broker, even if he is an agent for the seller, has knowledge of material defects and such defects are not known to or observable by the buyers, the broker is under a duty to disclose such defects and is liable for damages caused by nondisclosure; *Page 271 
such a duty is also placed on the seller. However, we decline to follow Lingsch. In our opinion the doctrine of caveatemptor, while rightfully being eroded in many areas, should remain alive and well in the situation before us — where the alleged defect does not affect health or safety.
The Cashions contend that Pope and Quint was their agent and that it violated its duty of faithfulness to them in not disclosing the water problem. A broker, as well as any agent, may be an agent for both parties in a sale transaction; however, he opens himself to possible liability when he does so without full disclosure to both parties. As Judge De Graffenried stated in Minto v. Moore, 1 Ala. App. 556, 564,55 So. 542, 544 (1911), this is merely an expression of the ancient principle that "a servant cannot serve two masters." Any broker, though especially a broker working with a multiple listing in which he has to work through another broker who deals directly with the seller, often finds himself in the precarious situation of seeking the trust and confidence of the prospective buyer while still claiming faithfulness to the seller. He cannot have it both ways.
In the case before us the Cashions claim that Marge Mills suggested to them that the asking price of the house was too high, and that they should submit a lower bid. While Mills denies the allegation, even she admits in her deposition that she suggested to Gus Vergos that the price was too high. SeeAlford v. Creagh, supra. Furthermore, while she contends that the Cashions were her customers and that the Ahmadis were her clients, she queried to the attorney deposing her, "Who represented Dr. Ahmadi if he [Gus Vergos] didn't?" in response to the question of whether Gus Vergos would normally attend the closing.
Whether one is an agent of another is normally a question of fact to be determined by a jury. Birmingham News Co. v.Birmingham Printing Co., 213 Ala. 256, 104 So. 506 (1925); 16 Ala.Dig., Principal Agent, 24. We believe that whether the total circumstances of this case require the conclusion that Pope and Quint, via their agent, Marge Mills, was an agent of Cashions, regardless of whether it may have been also an agent of the sellers, the Ahmadis, is a question for the jury under our scintilla evidence rule.
As to the question of whether Pope and Quint knew about the water problem, we note that while Marge Mills, Frank Hicks (ex-real estate agent for Pope and Quint) and Arthur Pope deny such knowledge, Dr. Ahmadi was sure that he had informed Hicks about the problem, though what seepage problem existed while he owned the house had been remedied several years prior to the sale to the Cashions. Dr. Ahmadi also stated that dampness in the basement was the reason the price of the house was reduced, though such is denied by the realtors. Again, the scintilla evidence rule makes disposal of the case based on this question premature.
The judgment in this cause is affirmed as to the Ahmadis and Vergos Realty Company and reversed as to Pope and Quint, Inc.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BLOODWORTH, JONES and EMBRY, JJ., and SIMMONS, Retired Circuit Judge, sitting by designation of the Chief Justice, concur.
OPINION CORRECTED; APPLICATION FOR REHEARING OVERRULED.
BLOODWORTH, JONES, ALMON and EMBRY, JJ., and SIMMONS, Retired Circuit Judge, sitting by designation of the Chief Justice, concur. *Page 272