Fennell Realty Company and Joann Brasher, a licensed real estate salesperson, appeal from a judgment based upon a jury verdict awarding James and Kathy Martin $17,000 on their claim against Fennell, Brasher, and John and Marcia Maicus, alleging fraudulent misrepresentation and deceit in the sale of a used residence.
On April 7, 1984, the Martins purchased the house from the Maicuses through Fennell Realty; Brasher (who was, at the time of the purchase, a salesperson for Fennell Realty); and Chris Dobson, a realtor who located the Maicus home in a multiple listing service. The sales contract provided that the Maicuses agreed that the heating system would be in "operable condition" at the time of closing; the contract was amended before closing to state, "House being sold 'as is' except Seller warrants heating air conditioning to be in working order at time of closing."
Without imposing any cost limitations, the Maicuses asked Brasher to do what was necessary to get the heating and air conditioning system "working." Brasher subsequently contacted a local air conditioning and heating service and instructed the repair technician to "get the system running." The technician testified that he told Brasher the system was unsafe, and that he told her that when he delivered to her an invoice containing the following statement:
 "Had to replace thermostat wiring and thermostat to get the system working. The furnace has a cracked combustion chamber and the vent is undersized. The furnace, vent, and evap coil need replacing for safe operation of furnace."
According to the technician, Brasher responded, "Well, all we have to do is get the system running." Brasher signed the invoice and called Dobson to tell her that "the house was ready for [the Martins] to go make an inspection." The sale closed on April 28, 1984, and the Martins moved into the house in May 1984.
Subsequent inspections of the unit revealed an undersized vent or flue (the problem detected prior to closing), which was open at a joint on top of the unit. Testimony indicated that this condition, left unremedied, would cause the release of carbon monoxide into the interior of the house. In fact, another repair technician, engaged by the Martins to examine the unit, testified: "I told [them] that they had a pretty serious problem and I was surprised that somebody hadn't gotten hurt or killed operating this piece of machinery."
The first issue is whether the trial court erred in denying the defendants' motion for judgment notwithstanding the verdict or, in the alternative, for new trial on grounds that the verdict was against the great weight and preponderance of the evidence; was not supported by sufficient evidence; and was excessive and contrary to law. There is a strong presumption that a jury verdict, if supported by the evidence, is correct (Ashbee v. Brock, 510 So.2d 214 (Ala. 1987), and Jawad v.Granade, 497 So.2d 471 (Ala. 1986)); and that presumption *Page 1005 
is strengthened by the trial court's denial of a motion for new trial. Ashbee, supra; Howard v. Crowder, 496 So.2d 31
(Ala. 1986).
Although Alabama retains the caveat emptor rule with regard to the resale of used residential real estate (Ray v.Montgomery, 399 So.2d 230 (Ala. 1980)), it is not applicable, under certain circumstances, when the purchaser of a used house inquires directly (either of the seller or of the seller's agent), prior to closing, about a material defect or condition of the home. If the agent is questioned directly, and the agent assumes the obligation to inspect the house for the defects inquired about and to disclose his findings to the buyer, the law imposes on the agent the duty of truthful disclosure of all material facts revealed by the inspection. Ray v. Montgomery,supra; Marshall v. Crocker, 387 So.2d 176 (Ala. 1980), citingJordan Sons v. Pickett, 78 Ala. 331 (1884); and Ala. Code 1975, § 6-5-102.
Moreover, if the agent (whether of the buyer or of the seller) has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent is under a duty to disclose the defect and is liable for damages caused by nondisclosure. This duty is also placed on the seller. SeeCashion v. Ahmadi, 345 So.2d 268, 270 (Ala. 1977).
On the day of closing, the Martins inspected the house with Dobson, found that the heating and air conditioning system would not operate, and called Brasher to the house. Mr. Martin's trial testimony reveals what took place after Brasher's arrival:
 "MR. PINO: What happened after Ms. Brasher arrived with respect to the heating and air conditioning unit?
 "MR. MARTIN: Well, she got it to where the thermostat would work.
"Q: What did she do?
 "A: I don't know exactly what she did, but she got it working. And she flipped it on, andsheraised her hand up. And she said, 'Okay. It's blowing,' or 'Okay. It's working,' or something in that order. And we felt the air coming through it, so it did have air blowing through it.
 "Q: Did it blow long enough to tell if it was warmed up or cooled or anything or what?
 "A: I don't think it stayed on long enough to tell whether the air conditioner was on or the heater was on.
 "Q: After you experienced that, did you have a conversation with Ms. Brasher there at the house about the results of the inspection of the heating and air conditioning unit?
 "A: Yeah. I don't know the exact wording of it, but she said everything was in operable order.
 "Q: Did she tell you anything about what the man had found that had come out there to inspect it?
"A: No, sir."
The operation of the heating and air conditioning system was raised again at closing, and Brasher repeated her statement that it was in "operable" condition:
 "MR. PINO: Isn't it a fact that if you did discuss it at all [at the closing], you told the Martins, 'Yes, the Neighborhood Plumber' — or whoever it is — 'went out there, checked out the system, and everything is working fine.' Didn't you tell them that or words to that effect?
 "MS. BRASHER: I said that everything was working.
 "Q: You said everything was working fine; there were no problems, didn't you?
 "A: I did not say 'fine' because it wasn't written in the contract for everything to be working fine. I just said everything was working."
James testified:
"MR. PINO: What did Ms. Brasher say
 "MR. PINO: What did Ms. Brasher say about the heating and air conditioning unit [during the closing]?
"MR. MARTIN: That it was in operable condition.
 "Q: Did she tell you that she had a man come out there and check it out? *Page 1006 
 "A: Yes, sir. She made that statement, that it had been checked out.
 "Q: Did she tell you what the results of that checking out were?
"A: That everything was fine.
"Q: Did you believe that?
"A: Yes, sir. I did."
Thus, there is sufficient evidence in the record that Brasher knew the condition under which the heating and air conditioning unit was "operating" and deliberately failed to disclose the condition to the Martins after their direct inquiry. Even if we assume, without deciding, that the contractual obligation to "get the unit in working order" meant no more than merely servicing the unit and that it had been complied with, such compliance would not excuse the agent's tortious failure to communicate to the buyer regarding the defective and dangerous condition, which was known to the agent and not the buyer and which affected the unit's safe and efficient operation. Not only is the evidence of record sufficient to support the fraud claim, but its weight and preponderance are clearly in favor of the verdict and the judgment entered thereon. For these reasons, we hold that the trial court did not err in denying the defendants' motion for judgment notwithstanding the verdict, or, in the alternative, for new trial.[1]
The second issue questions the propriety of the trial court's providing the jury, after its return of a verdict and assessment of damages, with additional verdict forms in order for it to segregate its awards of compensatory and punitive damages against the defendants. The only argument advanced by the appellants with respect to this issue is that the trial court, in explaining the verdict forms and discussing their application to the damages awards, either commented upon the evidence in the case or expressed an opinion on it. Limiting our review to these contentions, we find no error in regard to these supplementary jury instructions.
AFFIRMED.
TORBERT, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.
[1] Fraud, in a legal sense, is a misrepresentation of a material fact — one that induces the injured party to take action. SeeSpeigner v. Howard, 502 So.2d 367 (Ala. 1987); and Reeves v.Porter, 521 So.2d 963 (Ala. 1988). The evidence shows that Brasher's misrepresentation and failure to make full disclosure of the material fact of the heating unit's condition induced the Martins to fulfill the obligations of the sales contract.