629 So.2d 623 (1993)
Charles L. RUMFORD and Joanna Rumford
v.
VALLEY PEST CONTROL, INC.
William L. RAWLINS and Patsy Rawlins
v.
VALLEY PEST CONTROL, INC.
Charles L. RUMFORD and Joanna Rumford
v.
William L. RAWLINS, et al.
1910975, 1911156 and 1911624.
Supreme Court of Alabama.
June 30, 1993.
As Modified on Denial of Rehearing September 24, 1993.
*625 Dinah P. Rhodes of Blankenship, Robinson & Rhodes, P.C., Huntsville, for Charles L. Rumford and Joanna Rumford and on application for rehearing.
H. Harold Stephens of Lanier Ford Shaver & Payne P.C., Huntsville, for Valley Pest Control, Inc.
Aubrey O. Lammons of Lammons and Bell, Huntsville, for William L. Rawlins and Patsy Rawlins.
George K. Williams and Charles H. Pullen of Watson, Gammons & Fees, P.C., Huntsville, for Sherry Dinges.
INGRAM, Justice.
The plaintiffs, Charles L. Rumford and Joanna Rumford, appeal from summary judgments entered in favor of the defendants, William L. Rawlins and Patsy Rawlins, Sherry Dinges, and Valley Pest Control, Inc. ("Valley"). The Rawlinses appeal from the summary judgment entered on their cross-claim against Valley. Although these three appeals were taken at different times, they all arose from the same litigation and related to the same transaction. Therefore, we have consolidated these appeals for decision.
The Rumfords purchased a house from the Rawlinses. Sherry Dinges was the Rawlinses' agent in the transaction. Two years before the sale of the house, Valley had treated the house for termite infestation. Two years after they had purchased the house, the Rumfords discovered that it was infested with termites and that fungus and mildew were growing on the floor joists under the house.
The Rumfords sued Valley, Dinges, and the Rawlinses, seeking damages for negligence, wantonness, fraud, breach of contract, and conspiracy. The Rawlinses filed a cross-claim against Valley, alleging that Valley was responsible for any damages the Rawlinses might be required to pay the Rumfords.
The trial judge first entered a summary judgment in favor of Valley on all of the *626 claims brought against it, including the cross-claim. He then entered a summary judgment in favor of Dinges and the Rawlinses on the claims brought by the Rumfords. The trial judge gave no specific reasons for entering the summary judgments.
A summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), A.R.Civ.P. To overcome a properly supported motion for summary judgment, the nonmoving party must present substantial evidence supporting its claims and creating a genuine issue of material fact. Ala.Code 1975, § 12-21-12. To satisfy the "substantial evidence test," the nonmoving party is required to present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). When the trial court gives no specific reasons for entering a summary judgment, we will affirm the judgment if there is any ground upon which the judgment can be based. Yarbrough v. C & S Family Credit, Inc., 595 So.2d 880, 881 (Ala. 1992).
On February 16, 1988, the Rumfords contracted to purchase a house from the Rawlinses. The transaction was closed on March 16, 1988. In October 1990, the Rumfords discovered that part of the house was infested with termites and that fungus and mildew were present on the floor joists under the house. This litigation was commenced on January 22, 1991.
In 1986 the Rawlinses contracted with Valley to treat the house for termite infestation. Later, before putting the house on the market, Mr. Rawlins replaced a piece of molding near the chimney that showed evidence of termite infestation. The Rumfords also presented evidence that Valley had treated the house for termites in 1989 without the Rumfords' knowledge.
The record shows that as early as 1983 the Rawlinses were aware of the presence of fungus and mildew under the house. Before the closing, the Rumfords asked the Rawlinses if the house had any problems with moisture. The Rawlinses informed the Rumfords that there were no such problems. Shortly before the closing, an inspector had informed the Rawlinses that there was a problem with moisture under the house and that a "French drain" should be installed. The Rawlinses had a French drain installed under the house. They informed the Rumfords that the drain had to be installed to bring the house "up to code." The Rumfords presented evidence that at all times before the closing, a padlock was on the door to the crawl space under the house, thus preventing them from inspecting that area.
As a condition of the sale contract, the Rawlinses were required to produce a letter stating that the property was free and clear from termite infestation and damage from such infestation. On March 10, 1988, the Rawlinses contracted with Valley to inspect the house and supply a "termite letter." During this inspection, Valley did not detect any active termite infestation. However, the record shows that two termite letters were produced. The first letter, dated March 10, 1988, referred to an attached graph showing the area of previous termite infestation and the extent of damage to the house. That letter also contained the following notation: "Moisture and fungus that need attention."
After the French drain was installed, the Rawlinses contacted Valley and asked them to produce a second termite letter. Without performing another inspection of the house, Valley produced a second letter. That letter, dated March 14, 1988, did not mention any problem with fungus or moisture, nor did it contain any reference to the prior termite infestation. The second letter was produced at the closing; the Rumfords were not aware of the existence of the first letter until October 1990.
We will first address the issues raised by the Rumfords in their appeal from the summary judgment entered in favor of Dinges and the Rawlinses. In the next part of the opinion, we will address the issues raised by the Rumfords in their appeal from the summary judgment in favor of Valley. Finally, we will discuss the issues raised by the Rawlinses *627 in their appeal from the summary judgment in favor of Valley on the cross-claim.

I. Rumford v. Rawlins and Dinges (1911624)
Dinges and the Rawlinses argue that the trial court properly entered the summary judgment on the claims against them because, they argue, the Rumfords' claims are barred by the statute of limitations.
One count in the Rumfords' complaint sought damages for negligence and wantonness by the Rawlinses; and one count alleged negligence by the Rawlinses. These claims are governed by the two-year statute of limitations provided in § 6-2-38, Ala.Code 1975.
"Generally, a cause of action for injury or damage to property accrues, so as to start the running of limitations, on the date of the injury or damage, and not upon the occurrence of the negligence itself, or the last known negligent act." 54 C.J.S. Limitations of Actions, § 176 (1987) (citing Alabama Power Co. v. Cummings, 466 So.2d 99 (Ala. 1985) (footnotes omitted) (emphasis added). "[T]he cause of action `accrues,' and the statute of limitations begins to run, `when, and only when, the damages are sustained.'" McWilliams v. Union Pacific Resources Co., 569 So.2d 702, 704 (Ala.1990). As expressed with more particularity, "an action for damage to land accrues, for limitations purposes, upon discovery of the first actionable injury." See McWilliams v. Union Pacific Resources Co., 569 So.2d 702, 706 (Ala.1990) (Maddox, J., concurring specially) (emphasis added).
This rule is applicable not only to causes of action involving damage to the land itself but also to causes of action involving damage to appurtenant structures. In Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468 (1973), this Court held that the limitations period began to run on the date that ice was discovered inside the walls of an improperly constructed building. 291 Ala. at 609, 285 So.2d at 473.
The Rumfords discovered the live termites and termite damage on October 14, 1990. Before that date, the Rumfords had suffered no deprivation of the use or enjoyment of their home. We find McWilliams, supra, to be controlling in the present case. Thus their cause of action accrued within the two-year period immediately before January 22, 1991.
We further conclude that the Rawlinses failed to make a prima facie showing that there was no genuine issue of material fact with regard to the Rumfords' negligence and wantonness claims against them. Accordingly, the summary judgment on those claims is reversed. Ex parte Head, 572 So.2d 1276 (Ala.1990).
In Count XII of their amended complaint, the Rumfords allege that Valley, Dinges, and the Rawlinses conspired to produce a false termite letter at closing. This cause of action is also governed by the two-year statute of limitations. § 6-2-38(l). However, like the negligence and wantonness claims, this cause of action did not accrue until the Rumfords discovered the damage to their house. Moreover, we conclude that the Rumfords produced substantial evidence of a conspiracy between Valley and the Rawlinses to produce a false termite letter. Accordingly, the summary judgment in favor of Valley and the Rawlinses is reversed as to the conspiracy count. We conclude, however, that the trial court properly held that there was no genuine issue of material fact with regard to the conspiracy count against Dinges. Therefore, that portion of the summary judgment is affirmed.
In Counts IX, X, and XI of their amended complaint, the Rumfords sought damages from Valley, Dinges, and the Rawlinses for fraudulent concealment, suppression, and fraud. Count II alleged that Valley and the Rawlinses were liable for suppression; and Count VII alleged fraud by Valley and the Rawlinses. Counts I and III alleged fraud by the Rawlinses alone; and Count VIII of the amended complaint sought rescission of the sale contract based on the Rawlinses' alleged fraud.
We note that fraud claims are also governed by the general two-year statute of limitations set out in § 6-2-38(1). However, *628 because that provision would create a bar to the Rumfords' fraud claims, the "saving provision" set out in § 6-2-3 is invoked. Section 6-2-3 provides:
"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."
"[D]iscovery is made when facts become known `which provoke an inquiry in the mind of a man of reasonable prudence, and which, if followed up, would have led to a discovery of the fraud'; therefore, `fraud is deemed to have been discovered when it ought to have been discovered.'" Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784, 786 (Ala.1981) (quoting Johnson v. Shenandoah Life Ins. Co., 291 Ala. 389, 281 So.2d 636 (1972)). That is, the statutory period of limitations begins to run "when the plaintiff, in the exercise of ordinary care, should have discovered the misrepresentation." Haines v. Tonning, 579 So.2d 1308, 1309-10 (Ala.1991). The burden is on the plaintiffs to show that their claim comes within § 6-2-3. Miller v. Mobile County Board of Health, 409 So.2d 420, 422 (Ala.1982); Amason v. First State Bank of Lineville, 369 So.2d 547 (Ala.1979).
Our task is to determine whether the trial court properly decided that, as a matter of law, the Rumfords should have discovered the alleged misrepresentations at some point more than two years before they commenced this action. "The question of when a party discovered or should have discovered the existence of a fraud is ordinarily one for the trier of fact." Davis v. Brown, 513 So.2d 1001, 1003 (Ala.1987) (citing Sims v. Lewis, 374 So.2d 298 (Ala.1979)).
In this case, the summary judgment can properly be based on the statute of limitations only if the Rumfords actually knew of facts that would have put a reasonable person on notice of the fraud. We have held that "[t]he question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud." Hicks v. Globe Life & Accident Insurance Co., 584 So.2d 458, 462 (Ala.1991) (emphasis in Hicks).
The record shows that the Rumfords knew before the closing that the house had been inspected for termites. The letter prepared by Valley and presented at closing affirmatively states that during its inspection Valley had not detected any present termite infestation.[1] The record also shows that the Rumfords knew that a French drain had been installed under the house. They were told, however, that this was done to bring the house "up to code."
We note that the Rumfords thoroughly inspected the accessible areas of the house several times before closing. In fact, the record shows that the Rumfords prepared a list of repairs for the Rawlinses to make before the closing. While the Rumfords did not inspect the crawl space under the house, they were told by the Rawlinses that there were no problems with moisture in that area.
We conclude that the summary judgment in favor of Dinges and the Rawlinses cannot properly be based on the statute of limitations. While a jury may well conclude, based on all of the evidence, that the Rumfords should have discovered the possible fraud at a point more than two years before they filed their action, we cannot so hold as a matter of law.
The defendants also argue that because the Rumfords were in possession of the house for over two years before commencing this action, they should have discovered the alleged fraud at a point more than two years before they sued. We disagree. In Hicks, supra, the defendant insurance company argued that the plaintiff should have discovered an alleged fraud when she received her insurance policy. We concluded, however, that the time at which she should have discovered *629 the fraud was a question for the jury. Hicks, 584 So.2d at 462. Just as the plaintiff in Hicks was in possession of a document that may have contained evidence of the alleged fraud, in this case the Rumfords were in possession of the house.
In Thompson v. Vaughn, 592 So.2d 585 (Ala.1992), we held that the buyer's fraud claim against the seller was barred by the statute of limitations. In that case, the buyer lived in the house for over eight years before filing his claim. Significantly, the buyer also stated that he knew of the defect approximately seven years before he filed his claim against the seller. Id., 592 So.2d at 587. In the present case, we cannot conclude that merely because the Rumfords lived in the house for two years before commencing this action, they necessarily should have detected the presence of excessive moisture, fungus, mildew, and termites sooner than they say they did.
Dinges and the Rawlinses also argue that the Rumfords failed to present substantial evidence to support their allegations of fraud. Specifically, the defendants argue that they did not affirmatively misrepresent any facts about the house and that, because the Rumfords did not specifically ask about previous termite infestation or the presence of fungus or mildew, they were under no obligation to furnish such information. In other words, they claim that the doctrine of caveat emptor is a good defense to the Rumfords' fraud claims.
In Fennell Realty Co. v. Martin, 529 So.2d 1003 (Ala.1988), the purchasers of a house sued a realtor, alleging that the realtor had fraudulently misrepresented the condition of the heating system in the house. The heating system had several defects that created a dangerous condition in the home. 529 So.2d at 1004. In that case, we held that Alabama retains the doctrine of caveat emptor with regard to the sale of a used residence. We further held, however, that if an agent "has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent is under a duty to disclose the defect and is liable for damages caused by nondisclosure." Fennell, 529 So.2d at 1005. This duty of disclosure is also placed on the seller. Id.
The Rumfords' expert stated in his affidavit that "the termite damage and moisture problems as they existed in March, 1988, are material defects in the home that could affect the structural integrity of a house, and can affect the health and safety of its occupants." Based on this testimony, and in light of our holding in Fennell, we conclude that whether the Rawlinses were under an obligation to disclose the moisture problems and the previous termite infestation is a question for the jury. Accordingly, we hold that the summary judgment in favor of the Rawlinses cannot properly be based on the doctrine of caveat emptor.
After reviewing the record and considering the arguments of the Rumfords and the Rawlinses, we find no other ground upon which the summary judgment on the Rumfords' fraud claim could properly be based. Accordingly, we reverse the summary judgment with regard to the Rumfords' fraud claims against the Rawlinses.
While it is undisputed that the Rawlinses knew, at a minimum, that the house had previously been infested with termites and that there had been fungus and mildew under the house, the Rumfords have not presented substantial evidence that Dinges was aware of these potential problems with the house. Assuming that Dinges had a duty to disclose any material defects of which she had knowledge, she, nonetheless, cannot be held liable for failing to disclose that which she did not know. Cornelius v. Austin, 542 So.2d 1220, 1224 (Ala.1989). See also, Rosenbaum v. Texas Energies, Inc., 241 Kan. 295, 736 P.2d 888 (1987). Accordingly, the summary judgment in favor of Dinges on the fraud claims is affirmed.
The Rumfords' final claim against the Rawlinses alleged that the Rawlinses breached their contract with the Rumfords for the sale of the house. The contract provides, in relevant part, "The Seller will furnish a letter from a licensed exterminating company certifying that the improvements are free of termites and damage caused by *630 termites or other wood destroying insect infestation."
The Rawlinses argue that the summary judgment on this claim should be affirmed because, they argue, they fully complied with the requirements of the contract. That is, they assert that the March 14 letter, which stated that Valley did not detect any active termite infestation, fulfilled the terms of the contract.
While the contract did not expressly so provide, we conclude that the above-quoted provision must be read to require, at a minimum, that the sellers furnish a letter that, to the best of their knowledge, accurately describes the condition of the house. Because there is evidence that the Rawlinses knew about damage from termite infestation, we conclude that the Rumfords presented substantial evidence to support their claim that the Rawlinses breached the sale contract and to create a genuine issue of material fact. Accordingly, we reverse the summary judgment with regard to the breach of contract claim against the Rawlinses.

II. Rumford v. Valley (1910975)
Based on our discussion of these issues in Part I of this opinion, we hold that the Rumfords' negligence, wantonness, and conspiracy claims against Valley are not barred by the statute of limitations. Moreover, we conclude that the Rumfords presented substantial evidence in support of their negligence, wantonness, and conspiracy claims against Valley. Accordingly, the summary judgment in favor of Valley is reversed as to those claims.
Valley also claims that the fraud claims against it are barred by the statute of limitations. Based on our discussion of the Rumfords' discovery of the alleged fraud in Part I of this opinion, we conclude that the Rumfords' fraud claims against Valley are not barred, as a matter of law, by the statute of limitations. Moreover, we note that the doctrine of caveat emptor is not a good defense to the fraud claims asserted by the Rumfords against Valley.
Valley claims that the Rumfords failed to produce any evidence of actionable fraud by Valley. We disagree.
The March 10 termite letter issued by Valley mentioned both the previous termite infestation and the fungus and moisture problem. After being notified that a French drain had been installed, Valley prepared a second letter, omitting any mention of termite damage, moisture, or fungus. We conclude that, from these facts, a jury could reasonably infer that Valley intended to conceal from the Rumfords the fact that the house had previously been infested with termites and that excessive moisture and fungus were present under the house.
Finding no other basis upon which we can affirm the summary judgment in favor of Valley on the fraud claims, we must reverse it with regard to those claims.
In Count V of their complaint, the Rumfords alleged that they were third-party beneficiaries to the contract between Valley and the Rawlinses wherein Valley agreed to produce a termite letter, and they allege that Valley breached that contract.
Where certain conditions are met, a party has a cause of action as a third-party beneficiary for a breach of contract by either party to the contract. These conditions are succinctly set forth in Beverly v. Macy, 702 F.2d 931 (11th Cir.1983):
"It is well established that the parties to a contract may create rights in a third-party beneficiary by manifesting an intention to do so. `The crucial inquiry involves a determination of intent, and third parties may sue on the contract only if it may be said to have been intended for their direct, as opposed to incidental, benefit.' Ross v. Imperial Constr. Co., 572 F.2d 518, 520 (5th Cir.1978) (applying Alabama law); see Riegel Fiber Corp. v. Anderson Gin Co., 512 F.2d 784, 787-88 (5th Cir.1975) (applying Alabama law); United States Pipe & Foundry Co. v. United States Fidelity & Guaranty Co., 505 F.2d 88, 90 (5th Cir. 1974) (applying Alabama law). According to the Restatement (Second) of Contracts:
"`A beneficiary of a promise is an intended beneficiary if recognition of a *631 right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of a promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.... An incidental beneficiary is a beneficiary who is not an intended beneficiary.'
"Restatement (Second) of Contracts § 302. Thus, the key inquiry is whether the claimant was intended to be benefited by the contract provision in question. Further, `[i]t is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made.' Restatement (Second) of Contracts § 308. Finally, when determining whether the parties to the contract intended to bestow a benefit on a third party, a court may look beyond the contract to the circumstances surrounding its formation."
702 F.2d at 940 (citations and footnote omitted). The Rumfords contend that these conditions are met in this case and, therefore, that as third-party beneficiaries they have a valid cause of action against Valley for breach of its contract with the Rawlinses. We agree.
In addressing this claim, we must be careful to distinguish between the service contract executed in September 1986 requiring Valley annually to inspect the Rawlinses' house and treat it if necessary in connection with Valley's termite "bond," and the post-sales-contract agreement requiring Valley to conduct an unscheduled inspection of the house and issue a letter that would accurately represent the condition of the house at the time of the closing. For the latter contract, the Rawlinses paid a consideration of $30, which was in addition to the annual fee required for maintenance of the service contract.
The Rumfords do not claim to be beneficiaries of the service contract, and properly so. The service contract was for the benefit of the Rawlinses while they owned the house and not for the benefit of some hypothetical future buyer. Ray v. Montgomery, 399 So.2d 230 (Ala.1980). By contrast, the contract requiring Valley to produce a letter representing current conditions of the house arose only pursuant to the contract executed by the Rumfords and the Rawlinses for the sale of the property and, therefore, clearly contemplated an imminent sale, after which the Rawlinses would derive no benefit from termite protection. Indeed, the only party calculated to derive a direct, substantial benefit from such a contract is the prospective buyer. See Savage v. Wright, 439 So.2d 120, 123 (Ala.1983) ("inferable" that the provider of a termite letter "knew not only the purpose of his employment but that his `letter of clearance' would be presented to, and was for the benefit of, the purchaser"). Therefore, as to the Rumfords' breach of contract claim based on the contract to produce that letter, the summary judgment in favor of Valley is reversed.
In Count XIII of their complaint, the Rumfords allege that on March 16, 1988, they entered with Valley into a contract in which Valley agreed to apply treatment where active termites were found on the premises. They further allege that Valley breached that contract. Because the Rumfords failed to make any argument or to cite any authority with regard to this claim, the judgment of the trial court is affirmed as to the breach of contract claim based on that alleged contract. Rule 28(a)(5), A.R.App.P.; Sea Calm Shipping Co. v. Cooks, 565 So.2d 212 (Ala.1990).

III. Rawlins v. Valley (1911156)
In a three-count cross-complaint, the Rawlinses sued Valley, alleging fraud in Valley's preparation and issuance of a termite letter. The Rawlinses presented no substantial evidence that Valley intentionally, recklessly, or innocently misrepresented any facts to the Rawlinses. Noteworthy in this regard is the fact that the Rawlinses were aware of both termite letters prepared by Valley. In fact, the Rawlinses requested the second letter after having received (and presumably having read) the first. Moreover, it is undisputed that the Rawlinses knew, at a minimum, that the house had been infested *632 with termites in 1986. It is also undisputed that the Rawlinses knew, at some time before March 16, 1988, that there had been a problem with moisture and fungus or mildew under the house.
Even if the Rawlinses had presented evidence that Valley had negligently failed to detect termite infestation during its 1988 inspection or had negligently failed to treat the house for termites in 1986, they still failed to present any evidence that Valley made any misrepresentations to them about the condition of the house. Accordingly, we affirm the summary judgment on the Rawlinses' cross-claim insofar as it alleged fraud. West v. Founders Life Assurance Co. of Florida, 547 So.2d at 871; Yarbrough v. C & S Family Credit, Inc., 595 So.2d at 881.
The Rawlinses also alleged that Valley breached the contract that required it to issue a letter accurately representing the condition of the house at the time of the closing. The evidence supporting the Rumfords' breach of contract claim brought by them as third-party beneficiaries also supports a claim by the Rawlinses, as primary parties to the "letter" contract, against Valley for breach of contract. Thus, as to the Rawlinses' breach of contract claim against Valley, the summary judgment on the cross-claim is reversed, and the cause is remanded.

CONCLUSION
In the interest of clarity, we summarize our dispositions of these three appeals:
On the Rumfords' appeal from the summary judgment in favor of the Rawlinses and Sherry Dinges (1911624), the judgment in favor of Sherry Dinges is affirmed in all respects; the judgment in favor of the Rawlinses is reversed with regard to all of the Rumfords' claims; and the case is remanded.
On the Rumfords' appeal from the summary judgment in favor of Valley (1910975), the judgment is affirmed with regard to the count alleging breach of the March 16, 1988, contract to treat active termites found on the premises; the judgment is reversed with regard to the remaining counts; and the case is remanded.
On the Rawlinses' appeal from the judgment in favor of Valley on the cross-claim (1911156), the judgment is affirmed with regard to the fraud counts; the judgment is reversed with regard to the breach of contract count; and the case is remanded.
1911624AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES and STEAGALL, JJ., concur.
ALMON, J., concurs in the result except as to the reversal of the judgment on the negligence and wantonness claims; as to that reversal he dissents.
MADDOX and HOUSTON, JJ., concur except as to the reversal of the judgment on the fraud claim against the Rawlinses; as to that reversal they dissent.
1910975AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES and STEAGALL, JJ., concur.
ALMON, J., concurs in the result except as to the reversal of the judgment on the negligence and wantonness claims; as to that reversal he dissents.
MADDOX and HOUSTON, JJ., concur except as to the reversal of the judgment on the fraud claim; as to that reversal they dissent.
1911156AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.
ALMON, J., concurs in the result.
ALMON, Justice (concurring in the result in part and dissenting in part).
I dissent from the reversal as to the claims of negligence or wantonness. I concur in the result as to the other claims.
HOUSTON, Justice (concurring in part and dissenting in part).
I concur except to the extent that this Court reverses on the basis of Hicks v. Globe *633 Life & Accident Insurance Co., 584 So.2d 458 (Ala.1991). To that extent, I dissent. I dissented in Hicks from the very ruling on which the majority now relies. I still think I was right in Hicks.
MADDOX, J., concurs.

On Application for Rehearing
INGRAM, Justice.
OPINION MODIFIED; APPLICATION OVERRULED.
NOTES
[1] The letter does contain a disclaimer indicating that there could have been termites in inaccessible areas that Valley did not inspect. This disclaimer, however, was part of the printed form used by Valley and would not have necessarily led the Rumfords to suspect that other areas of the house were infested with termites.