641 So.2d 253 (1994)
COMPASS POINT CONDOMINIUM OWNERS ASSOCIATION, et al.
v.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF FLORENCE, et al.
1921555.
Supreme Court of Alabama.
April 15, 1994.
*254 William J. Baxley and Joel E. Dillard of Baxley, Dillard, Dauphin & McKnight, Birmingham, Bayless Biles, Bay Minette, for appellants.
W.A. Kimbrough, Jr. and Frank Woodson of Turner, Onderdonk, Kimbrough & Howell, P.A., Mobile, for appellees.
MADDOX, Justice.
The Compass Point Condominium Owners Association, Inc., and 54 individual unit owners filed a complaint in the Baldwin County Circuit Court, asserting fraud against First Federal Savings and Loan Association of Florence, its executive vice president Thomas N. Ward, and others. The plaintiffs alleged that the fraud arose out of First Federal's sale of 68 condominiums at an auction in Gulf Shores. Specifically, the plaintiffs assert that the defendants were under a duty to disclose a report prepared by Thompson Engineering Testing, Inc., concerning water intrusion into the Compass Point complex and that they fraudulently concealed that report. The trial court entered a summary judgment in favor of the defendants. The plaintiffs appeal.
First Federal became the owner of 68 units at Compass Point Condominiums as a result of the settlement of a lawsuit and a foreclosure. These condominiums were sold at an auction on August 28, 1988. Before the auction, S & L Group, Inc., a property management group hired by First Federal to manage Compass Point Condominiums, hired Thompson Engineering to prepare a report on water intrusion in the building. William Kivette, an employee of Thompson Engineering, testified that he was told that the S & L Group wanted to know why the building was leaking. After five days of testing, Kivette determined that the building was saturated with moisture. He delivered a written report to Ray Stronsky, S & L Group's senior property manager, recommending that the building be recoated "with a suitable elastomeric coating." Terrie Campfield, the property manager on site, stated that Ray Stronsky told her to keep the report secret and to lock it up because the auction was to be held in two days and he did not want potential purchasers at the auction to know about the problems described in the report. Ms. Campfield said that she locked the report in her desk. Ms. Campfield also stated that on one occasion she handed the report to Thomas N. Ward, executive vice president of First Federal. The auction was held on August 28, 1988, and the report was not disclosed to purchasers. The plaintiffs alleged deceit and suppression of material facts; they demanded $350,000 in compensatory damages and $2,000,000 in punitive damages. Specifically, the plaintiffs contended that the defendants suppressed the report and that the report was a material fact that the defendants were under an obligation to communicate.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering summary judgment. The rule requires the trial court to determine (1) that there is no genuine issue of material fact, and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
"`The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden *255 does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala.1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).'"
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quoting Schoen v. Gulledge, 481 So.2d 1094 (Ala.1985)).
The standard applicable to a review of a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Section 12-21-12, Ala.Code 1975, mandates that the nonmovant meet his burden by "substantial evidence." Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Under the substantial evidence test the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
In order to establish fraudulent concealment, a plaintiff must show (1) that the defendant had a duty to disclose a material fact; (2) that the defendant either failed to disclose or concealed that material fact; (3) that the defendant's failure to disclose, or concealment of, that material fact induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered damage as a result of the action, or inaction, induced by the defendant's failure to disclose, or concealment of, the material fact. See Cornelius v. Austin, 542 So.2d 1220, 1223 (Ala.1989). This Court has also stated:
"For active concealment to be recoverable, the facts suppressed must not only be material, but either the materiality must be known to the seller, or the facts must so constitute an element of the value of the contract as to authorize the inference of knowledge of its materiality, and the concealment must be for the purpose of continuing a false impression or a delusion under which a purchaser has fallen, or suppressing inquiry and thereby effecting a sale with the intention to conceal or suppress...."
Speigner v. Howard, 502 So.2d 367, 371 (Ala. 1987). The plaintiffs failed to produce substantial evidence that the suppression of the Thompson Engineering report prevented them from discovering the water intrusion before closing. Twenty-one out of the 49 plaintiffs who inspected the property before purchasing noticed water intrusion in the building. The plaintiffs established by substantial evidence only that the defendants knew of water intrusion into the building and hired Thompson Engineering to determine the source; that the Thompson Engineering report revealed water intrusion into the complex; that Stronsky told Terrie Campfield to hide the Thompson Engineering report; and that Stronsky told the two Thompson Engineering engineers who performed the test not to discuss their report with anyone. In an attempt to establish that the water intrusion was not obvious, the plaintiffs presented the testimony of the two Thompson Engineering engineers, who said that a layman would not be able to see from the parking lot that the coating on the building was incomplete.
Although this Court has abrogated the rule of caveat emptor in the sale by a builder-vendor of a new house, Cochran v. Keeton, 252 So.2d 313 (Ala.1971), this Court has continued to hold that there is no implied warranty of habitability in the sale of used residential real estate, and the rule of caveat emptor still applies in such a sale. Ray v. Montgomery, 399 So.2d 230 (Ala.1980). The plaintiffs had ample opportunity to inspect the condominiums. After the bidding was *256 completed, all of the plaintiffs signed a real estate sales contract. The sales contract contained the following provision:
"NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, OR ANY REPRESENTATION, WRITTEN OR ORAL, SELLER IS SELLING THE UNIT TO PURCHASER WITHOUT ANY WARRANTY AS TO ITS EXISTING CONDITION. PURCHASER HEREBY ACCEPTS THE UNIT AND THE COMMON ELEMENTS IN THEIR EXISTING CONDITION, `AS IS `. Purchaser acknowledges that the purchaser has inspected the unit and the common elements prior to execution of this contract and accepts the same in their `as is' condition."
The plaintiffs had the building recoated with an elastomeric coating. The defendants presented testimony that the elastomeric coating work performed on the building was ordinary maintenance for a building of this type. Specifically, the defendants stated that the "uncontradicted testimony is that this must be done on the average of every five years." (R. 303.) The plaintiffs presented no evidence that the defendants' failure to disclose the Thompson Engineering report induced the plaintiffs to act or to refrain from acting or that the plaintiffs suffered damage as a result of the defendants' failure to disclose the Thompson Engineering report. Once a party moving for summary judgment supports the motion by affidavits or other testimony, an adverse party may not rest upon allegations or denials contained in his pleadings, but must respond by presenting substantial evidence creating a genuine issue of material fact. Ala.R.Civ.P. 56. Whatley v. Cardinal Pest Control, 388 So.2d 529 (Ala.1980).
This case is distinguishable from Soniat v. Johnson-Rast & Hays, 626 So.2d 1256 (Ala. 1993). In Soniat, this Court reversed the defendants' summary judgment, holding that the plaintiffs had presented substantial evidence creating genuine issues of material fact as to whether the defendants had intentionally concealed a graph showing old termite damage and whether the plaintiffs would not have bought the house if they had seen the graph. In Soniat, the plaintiffsthe Soniatspurchased a used residence; shortly after moving into the house they discovered that it had substantial termite damage. The plaintiffs presented testimony from the president of American Termite and Pest Control Company that he had been contacted before the closing and had been asked to prepare a termite bond for the closing. He further testified that he had prepared a graph showing where the house had old termite damage and that he had attached it to the termite bond his company prepared for closing. The graph was not shown to the plaintiffs at closing. The plaintiffs in Soniat were not aware of the termite damage, and it was not a readily observable defect. They had an independent inspector look over the property before the closing, and he did not report any termite damage. The plaintiffs stated that they would not have bought the house if they had seen the graph. In this case, the water intrusion was an observable defect. As stated above, 21 out of the 49 plaintiffs who inspected the property prior to purchasing noticed water intrusion in the building. In addition, the plaintiffs in this case did not state that they would not have bought the condominiums if they had seen the report.
For the foregoing reasons, the summary judgment for the defendants is affirmed.
AFFIRMED.
SHORES, HOUSTON, STEAGALL and COOK, JJ., concur.
HORNSBY, C.J., concurs specially.
KENNEDY and INGRAM, JJ., dissent.
HORNSBY, Chief Justice (concurring specially).
I write to address the majority's reliance on the doctrine of caveat emptor to decide this appeal based on the plaintiffs' opportunity to inspect the condominiums and, particularly, the sales contract, which states that the purchasers took the property "AS IS." Although I agree with the affirmance of the summary judgment against the fraudulent concealment claim, I note the following language from this Court's opinion in Fennell Realty Co. v. Martin, 529 So.2d 1003 (Ala. 1988). In Fennell Realty, we stated:

*257 "Although Alabama retains the caveat emptor rule with regard to the resale of used residential real estate [citation omitted], it is not applicable under some circumstances, when the purchaser of a used house inquires directly (either of the seller or the seller's agent), prior to closing, about a material defect or condition of the home. If the agent is questioned directly, and the agent assumes the obligation to inspect the house for the defects inquired about and to disclose his findings to the buyer, the law imposes on the agent the duty of truthful disclosure of all material facts revealed by the inspection. [Citations omitted.]
"Moreover, if the agent (whether of the buyer or of the seller) has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent is under a duty to disclose the defect and is liable for damages caused by nondisclosure. This duty is also placed on the seller. [Citation omitted.]"
529 So.2d at 1005 (emphasis added).
The plaintiffs' argument for reversal must fail. They failed to present substantial evidence either that they inquired about the possibility of water damage and were told by the defendants that none existed, or that the water-saturated condition of the condominiums was not readily observable to the potential purchasers. The plaintiffs did present evidence that laypersons would not be able to discern the deteriorated condition of the exterior coating on the condominiums, but that evidence does not rebut the defendants' showing that the water intrusion and related damage in the condominiums was readily observable before the sale.
The plaintiffs offered expert testimony that the water saturation and damage constituted a defect affecting health and safety; I write to make it clear that the doctrine of caveat emptor applies only because that defect was readily observable. See Fennell Realty.